IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. 7:20-CV-00046-M

| | | |
|---|---|---|
| BARBARA RILEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LANCE CEPHAS *individually and doing* | ) | |
| *business as* LANCE CEPHAS SERVICES | ) | |
| AND RAYMOND HOLLIDAY, | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant's Motion to Dismiss [DE-7]. This diversity
action arises from an automobile collision on North Carolina Highway 24. The original complaint,
removed from state court, raised five separate causes of action seeking to recover both
compensatory and punitive damages. A stipulation of voluntary dismissal [DE-14] disposed of
three of the five claims.

I.      Factual and Procedural History

Plaintiff alleges that on or about November 15, 2018, at approximately 8:43 p.m., she was
driving west along North Carolina Highway 24 in Carteret County, North Carolina. Compl. ¶ 7,
DE-1-1. At the same time, Defendant Cephas was driving east along the same highway in a
freightliner tractor-trailer. *Id.* ¶¶ 8-9. Defendant Cephas was apparently traveling with Defendant
Holliday. Defendant Cephas was attempting a left turn onto a private driveway while Defendant
Holliday was directing traffic wearing dark clothing, without wearing a reflective vest. *Id.* ¶¶ 10-
13. Plaintiff collided with the trailer and sustained injuries.

1

Plaintiff filed suit in the Superior Court of Onslow County, North Carolina, on November 14, 2019. Notice of Removal ¶ 1, DE-1. The named Defendants included Lance Cephas, individually and doing business as Lance Cephas Services, and Raymond Holliday. *Id.* The Defendants were served on February 14 and 15, 2020. *Id.* ¶ 2-3. Defendant Cephas removed the case to federal court on the basis of diversity jurisdiction on March 13, 2020, with Defendant Holliday's consent "upon information and belief." *Id.* ¶¶ 4-6.

Defendants filed a Motion to Dismiss [DE-7] and Answer [DE-9] to the complaint on March 20, 2020. The Defendants seek to dismiss counts two and three of Plaintiff's complaint (respondeat superior and negligent hiring/training) for a lack of personal jurisdiction due to the fact that Lance Cephas Services is a sole proprietorship, which cannot be sued. DE-8 at 3-4. The Defendants seek to dismiss count four (negligence) against Defendant Holliday for failure to state a claim on the basis that he owed no duty to wear reflective gear while assisting Defendant Cephas with the left turn. *Id.* at 4-6. The Defendants seek the dismissal of count five (spoliation) on the basis that negligent spoliation is not a recognized cause of action in North Carolina. *Id.* at 6-7. Finally, Defendants argue that no wanton or willful conduct has been alleged to support Plaintiff's claim for punitive damages. *Id.* at 7-9. The motion does not challenge count one (negligence & negligence per se) against Defendant Cephas in his individual capacity.

On April 6, 2020, the parties filed a Stipulation of Voluntary Dismissal [DE-14] dismissing counts two, three, and five of the complaint. Plaintiff filed a response in opposition to the Motion to Dismiss on April 10, 2020 [DE-15] addressing the two remaining issues: negligence by Defendant Holliday and punitive damages. Defendants filed a reply on April 24, 2020 [DE-17] and the motion is ripe for ruling.

II.     Motion to Dismiss Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In doing so, the court must accept all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011) (limiting review to the complaint itself when reviewing a district court's decision to grant a motion to dismiss); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'") (citations omitted); *see also Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 757 (D. Md. 2015) (declining to consider the expanded factual allegations in affidavits and exhibits attached to a plaintiff's response in opposition to a motion to dismiss); *Bostic v. Mader*, Case No. 2:12cv87, 2013 WL 4079288, at *8 (W.D.N.C. Aug. 13, 2013) (disregarding elaborated facts in plaintiff's response in opposition to a motion to dismiss because it is not a pleading under Fed. R. Civ. P. 7(a)).

3

However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678; *see also Giarratano*, 521 F.3d at 302. Nor must a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Iqbal*, 556 U.S. at 678. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.

III.    Analysis

A.  Claim of Negligence Against Defendant Holliday

Defendants argue that Defendant Holliday had no duty to wear reflective gear because the regulation cited by Plaintiff to support her cause of action (23 C.F.R. § 634) was removed from the Code of Federal Regulations effective January 25, 2010. In response, Plaintiff concedes that the provision relied upon was removed from the Code of Federal Regulations[1] and seeks instead to rely on the Manual on Uniform Traffic Control Devices ("MUTCD") for the requirement that Defendant Holliday wear high visibility apparel while exposed to traffic.

Plaintiff specifically relies upon MUTCD sections 6D.03 (requiring "[a]ll workers, including emergency responders, within the right-of-way who are exposed either to traffic . . . or work vehicles and construction equipment within the TTC zone shall wear high-visibility safety apparel . . . .") and 6E.02 (requiring "flaggers" to wear high-visibility safety apparel). Plaintiff claims Defendant Holliday constituted a "worker" as defined by section 1A.13(138).

---

[1] Because of this concession, the court will not address this regulation.

4

In the alternative, Plaintiff argues that Defendant Holliday was negligent in his attempt to direct traffic in dark clothing without reflective gear regardless of whether or not he was required by law to wear reflective gear. In reply, Defendants argue that the MUTCD is not applicable to Defendant Holliday. As for Plaintiff's alternative argument of ordinary negligence, Defendants argue it should be disregarded because the underlying factual allegations of Defendant Holliday directing traffic around an unlit, car-carrier trailer at night, wearing dark clothes with no reflective vest, using only a smartphone flashlight were not included in her complaint.

A federal court sitting in diversity must apply the substantive law of the forum state as would the highest court of that state. *Castillo v. Emergency Med. Assocs. PA*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Manual on Uniform Traffic Control Devices ("MUTCD") serves as "the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel." 23 C.F.R. § 655.603(a); *see* 23 C.F.R. § 655.601(d) (incorporating by reference the MUTCD into federal regulations). North Carolina has adopted the MUTCD. *See* N.C. Gen. Stat. § 136-30(a) ("All traffic signs and other traffic control devices placed on a highway in the State highway system must conform to the Uniform Manual."). However, it is unclear the extent to which a private actor's noncompliance with the MUTCD can support a claim of negligence under North Carolina law. *See Pope v. Bridge Broom, Inc.*, 240 N.C. App. 365, 383, 770 S.E.2d 702, 715 (N.C. Ct. App. 2015) ("Although this Court has held that the North Carolina Department of Transportation can be held liable under a theory of negligence per se for violating the MUTCD, our appellate courts have not yet addressed whether a private actor's noncompliance with the MUTCD can support a claim of negligence per se.") (citation omitted); *cf. Gorman v. Earhart*, 876 S.W.2d 832, 836 (Tenn. 1994) (holding

MUTCD applies only to public authorities and those entities with a contractual relationship with public authorities for the construction, operation, or maintenance of public roads and highways).

Under North Carolina law,

> To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach. The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence. The duty of ordinary care is no more than a duty to act reasonably. The duty does not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable and avoidable through the exercise of due care. Thus, [i]t is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected. Usually the question of foreseeability is one for the jury.

*Fussell v. N. Carolina Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (N.C. 2010) (internal quotations and citations omitted).

Under North Carolina law in the automobile-collision context legal duties have been recognized for motorists and pedestrians. A "motorist operating a vehicle in a public vehicular area has a duty to maintain a lookout and to use the care which a reasonable man would use in like circumstances to avoid injury to another." *Corns v. Hall*, 112 N.C. App. 232, 237, 435 S.E.2d 88, 90 (N.C. Ct. App. 1993). "[P]edestrians have a duty to maintain a lookout when crossing an area where vehicles travel and a duty to exercise reasonable care for their own safety." *Id.*; *see also Anderson v. Carter*, 272 N.C. 426, 432, 158 S.E.2d 607, 611-12 (N.C. 1968) ("Ordinary care surely requires a . . . man, under no disability, who observes that he is in the path of an automobile approaching . . . to do more for his own protection than merely walk at the same pace across the path of the automobile . . . ordinary care requires the man to jump or run from the path of danger, even though there may be some risk or loss of dignity in that process."); *Blake v. Mallard*, 262

6

N.C. 62, 65, 136 S.E.2d 214, 217 (N.C. 1964) ("Having chosen to walk diagonally across a six[-]lane highway, vigilance commensurate with the danger to which plaintiff had exposed herself was required of her.").

This case presents a different scenario, as Defendant Holliday was neither operating a vehicle on the highway nor was he a pedestrian. Rather Defendant Holliday, the apparent passenger in the tractor-trailer, exited the vehicle in an effort help Defendant Cephas negotiate a left turn onto a private driveway and direct oncoming traffic around the trailer. Even construing all factual allegations in the light most favorable to the Plaintiff at this pleading stage, Plaintiff failed to adequately articulate the basis for a legal duty upon Defendant Holliday, a vehicle passenger trying to prevent a collision, to "wear highly reflective material while directing traffic in conditions with limited lighting." DE-1-1 ¶ 40. Assuming *arguendo* the MUTCD were applicable to a private actor under North Carolina law, the court does not find that the MUTCD provisions cited and relied upon by Plaintiff applicable to Defendant Holliday under these circumstances. Finally, there has been no allegation of Defendant Holliday operating the tractor-trailer on the evening in question, yet Plaintiff asserts that he "was otherwise negligent in his actions of operating a motor vehicle." *Id.* ¶ 41(b). With no legal duty, there can be no plausible claim for negligence.

## B. Prayer for Punitive Damages Against Defendant Cephas

Defendants argue that Plaintiff's prayer for punitive damages should be dismissed with prejudice because her complaint fails to allege willful or wanton conduct on the part of Defendants. In her response in opposition, Plaintiff argues that Defendant Cephas "consciously disregarded the safety of others by creating a hidden, unavoidable danger within the highway at night, and that said conduct was wanton." DE-15 at 7-8.

7

As a general rule,

> "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, *Damages and Recovery* § 195 at 389 (1972). North Carolina follows this general rule of law.

*Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (N.C. Ct. App. 1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (N.C. 1992); *see also* N.C. Gen. Stat. § 1D-15.

However, in order to recover punitive damages in North Carolina, a complaint must allege facts or elements demonstrating the aggravating factors that would support such an award. *Wiley v. L3 Communications Vertex Aerospace, LLC*, 251 N.C. App. 354, 367, 795 S.E.2d 580, 590 (N.C. Ct. App. 2016) (citation omitted). Those aggravating factors are fraud, malice, or willful or wanton conduct. *Id.*; *see also* N.C. Gen. Stat. § 1D-15(a). The aggravating factor alleged here, willful or wanton conduct, is defined under North Carolina law as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. 'Willful or wanton conduct' means more than gross negligence.'" N.C. Gen. Stat. § 1D-5(7); *see also Brewer v. Harris*, 279 N.C. 288, 296-97, 182 S.E.2d 345, 350 (N.C. 1971) ("An act is done willfully when it is done purposely and deliberately in violation of law . . . [a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.") (internal quotations and citations omitted).

In the automobile-collision context, facts or elements deemed sufficient to demonstrate the willful or wanton conduct on the part of defendants for purposes of surviving a motion to dismiss have included encouraging and requiring truck drivers to drive while impaired with fatigue, in violation of Federal Motor Carrier Safety Administration ("FMCSA"). *See Young v. Carter*, Case

8

No. 5:19-CV-218-FL, 2020 WL 525930, at \*7 (E.D.N.C. Jan. 31, 2020) (attaching to complaint criminal plea agreements and attendant statement of facts, wherein defendants admitted to "knowingly" and "willfully" conspiring to violate the FMCSA safety regulations; citing fines allegedly levied against defendant trucking company in the past and arguing these fines did not deter defendants from committing FMCSA violations because they valued corporate profits over the safety of the driving public). Insufficient to demonstrate willful or wanton conduct was a complaint that failed to (1) state how, why, or when defendants knew or had reason to know of faulty brakes in the car prior to the collision and (2) describe what definitive activity one Defendant was undertaking while allegedly "operating a cellular phone immediately before the collision." *Bostic v. Mader*, Case No. 2:12cv87, 2013 WL 4079288, at \*8-10 (W.D.N.C. Aug. 13, 2013) (applying North Carolina law).

In her complaint, Plaintiff makes the following allegations about Defendant Cephas' willful or wanton conduct: he "operated the Tractor-trailer carelessly and heedlessly in a reckless, willful and wanton disregard for the safety of others including Plaintiff . . . ," DE-1-1 ¶ 16(g), and his conduct "was wanton, gross, reckless and in complete disregard for the safety and rights of others," *id.* ¶ 20. Plaintiff elaborates by alleging Defendant Cephas

> attempted to cross two lanes of traffic at night, stopped the tractor-trailer, blocked a portion of the roadway with an unlit car carrier trailer, and exposed oncoming drivers like Ms. Riley to a deadly hazard. . . . Defendant Cephas' ordinary negligence is exacerbated by the fact that he left his unlit empty car carrier trailer standing across the highway at night, leaving approaching drivers little to no chance to observe and avoid the trailer. It is reasonable for a trier of fact to find that he knowingly and willfully created this danger based on the evidence that he had his employee in the middle of the road attempting to warn others of the unlit car carrier trailer in the road.

9

DE 15 at 6. Because this elaboration is not made in Plaintiff's complaint but rather appears in a response in opposition to Defendants' motion to dismiss, the court must disregard it since a Rule 12(b)(6) motion challenges the sufficiency of the pleadings only. *See, e.g.*, *Braun*, 652 F.3d at 559. Other than conclusory statements including the key words "willful and wanton conduct," the complaint fails to allege facts or elements demonstrating the aggravating factor that would support an award for punitive damages.

IV.    Conclusion

Based on the foregoing, Defendants' Motion to Dismiss [DE-7] is GRANTED WITHOUT PREJUDICE. This ruling, in conjunction with the parties' Stipulation of Voluntary Dismissal of Certain Claims [DE-14], leaves one claim intact: negligence against Defendant Cephas, in his individual capacity. The case will proceed on this claim.

Furthermore, pursuant to Defendants' representation in the first paragraph of their memorandum in support of motion to dismiss [DE-8], the Clerk of Court is hereby DIRECTED to change the case caption in this matter to reflect the correct spelling of Cephas for both Defendant Lance Cephas individually and doing business as Lance Cephas Services.[2]

SO ORDERED this the 11 day of May, 2020.

Richard E Myers II
RICHARD E. MYERS II
U.S. DISTRICT COURT JUDGE

---

[2] For the sake of accuracy, the court has used the correct spelling of Cephas in the case caption of this order and in all internal references to Defendant Cephas and Lance Cephas Services.

10